## JOSEPHINE RAMETTA *v.* CONRAD A. STELLA ET AL.
### (7275)

BORDEN, STOUGHTON and NORCOTT, Js.

Argued April 18—decision released July 25, 1989

*Robert M. Shields, Jr.,* with whom were *Jeffrey A. Hoberman,* and, on the brief, *Wesley W. Horton,* for the appellants (defendants).

*Michael P. Barry,* for the appellee (plaintiff).

NORCOTT, J. The defendants, Conrad A. Stella (Stella) and Stella Insurance Agency (agency), appeal from the judgment of the trial court awarding the plaintiff

$60,300 in damages for the defendants' failure to procure an insurance policy on the plaintiff's property. The defendants do not contest the issue of liability, but rather appeal only the award of damages. They claim that the trial court's judgment is erroneous because the plaintiff suffered no damages as a result of the defendants' negligence or as a result of the defendant agency's breach of contract.

The trial court made the following findings of fact. The plaintiff and her family had utilized Stella as their insurance agent for many years. The plaintiff had obtained insurance coverage for the subject property through Stella since at least 1980. The plaintiff consulted Stella about the amount of insurance coverage to obtain, and she always followed his recommendation.

Stella would obtain the policy for the plaintiff, and the plaintiff would pay all premiums for the coverage directly to the agency. The plaintiff's payment to the agency was usually made after Stella and the agency had already advanced the amount due to the insurance company and obtained the policy for her. This same procedure was followed with the last insurance policy obtained for the plaintiff by the agency in 1985 from the Terra Nova Company. The policy was issued on May 6, 1985, after the agency advanced the premium, and Stella went to the plaintiff's home in Old Lyme in July to collect the amount due.

On March 29, 1986, Stella and the agency received a copy of a notice from the Terra Nova Company stating that the plaintiff's policy would expire on May 6, 1986, and would not be renewed. The plaintiff and Stella discussed this notice during a meeting in March or April, 1986. On May 2, 1986, the plaintiff went to the agency and met with the office manager, Maria Stella. During this meeting, the plaintiff related that she had a buyer, Frank Pascale, for the property, and

that she wanted to make sure that there was coverage on the property until the closing date.[1] The plaintiff paid $300 as a deposit for the insurance and said she would pay the balance when the exact amount due was known.[2] Maria Stella said she would "obtain coverage if at all possible."

After this meeting, the defendants attempted to place $60,000 coverage on the property with various companies but were unable to do so. As a "last resort," they filed an application, dated May 19, 1986, with the Connecticut Insurance Placement Facility (Fair Plan). Fair Plan requested the plaintiff's social security number and mailing address from the defendants, but the information was never provided. Even without this additional information, however, Fair Plan approved the application for insurance.

On June 12, 1986, the agency received notice from Fair Plan that it had approved the plaintiff's policy and that full payment of the premium was due in order to render the policy effective. The agency sent no money to Fair Plan as it had with the plaintiff's past policies, but did not inform the plaintiff that it would not advance the premium payment. Because the premium had not been paid, no insurance was ever issued. The agency applied the $300 deposit to unrelated charges owed by the plaintiff without informing her of this use of her funds. On July 4, 1986, the building on the plaintiff's uninsured property was destroyed by fire. During the period from May 2, 1986, prior to the termination of the Terra Nova policy, to the date of the fire, Stella had not communicated with the plaintiff.

---

[1] The plaintiff had contracted to sell the property to Frank Pascale for $190,000 on or before July 31, 1986.

[2] The plaintiff was given a receipt stating "Dep. for pol. to be ordered for 319 Rocky Hill Ave. Fire Ins."

After the fire, the plaintiff refused to sell the subject property to Pascale, and Pascale brought suit against her for specific performance of their sales contract. In October, 1986, the plaintiff reached an agreement with Pascale whereby he would withdraw his suit, and the plaintiff would sell him the property for the originally agreed upon sale price of $190,000. As a further condition of this agreement, the plaintiff agreed to institute an action against the defendants for failing to procure insurance on the subject property and to divide the net proceeds of any recovery with Pascale. The defendants claim that the plaintiff's damages were reduced to a nominal figure by this subsequent agreement with Pascale.

The defendants appeal from the trial court's award of $60,300 in damages. That figure represents the $60,000 that the plaintiff would have received had the policy been in effect at the time of the fire and reimbursement for the $300 deposit the plaintiff had given to the agency to be applied toward the purchase of an insurance policy.

An action against an insurance agent may be brought under either a theory of breach of contract or negligence. *Ursini* v. *Goldman,* 118 Conn. 554, 558–60, 173 A. 789 (1934). Here, the plaintiff's action is based upon both theories. The trial court found that $60,000 in damages was attributable to the defendants' negligence, and $60,300 in damages was attributable to the defendant agency's breach of contract. On the basis of these findings, the trial court awarded a total of $60,300 in damages against the defendants. The court awarded damages against both defendants jointly and severally in the amount of $60,000 based upon the negligence claim and against the defendant agency in the amount of $300 on the contract claim. The defendants contest only that portion of the trial court's award that grants the plaintiff $60,000, the amount that the plaintiff

would have received had the policy been in effect at the time of the fire. The defendants concede that the plaintiff is entitled to a refund of the $300 deposit that she left with the defendant agency to be applied toward the purchase of insurance.

The defendants claim that the plaintiff suffered no damages because she obtained the same sales price for her property after the fire as she would have obtained from the sale of her property before the fire. They argue, further, that under the original sales agreement, the plaintiff would have received no benefit from the policy, but would have turned over the proceeds to the buyer.

The plaintiff counters that the award of damages was appropriate under either the negligence or the breach of contract theory of liability. She argues that (1) the subsequent sale agreement cannot be used to mitigate the damage liability of the defendants for their negligence because of the application of the collateral source rule, and (2) the measure of damages for breach of contract is the loss sustained at the time of the breach.

When the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. *Zachs* v. *Groppo,* 207 Conn. 683, 689, 542 A.2d 1145 (1988). Because the defendants are not challenging the facts or contesting liability, the issue for our determination is whether the trial court applied the appropriate measure of damages.

The defendants claim that because the plaintiff suffered no damages as a result of the defendants' negligence due to the subsequent sale of her property, granting recovery constituted a windfall to the plaintiff. The defendants counter the plaintiff's assertion of

the collateral source rule by arguing that it is inapplicable to the present case.

Under the collateral source rule, "a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where the payment comes from a collateral source, wholly independent of him." *Lashin* v. *Corcoran,* 146 Conn. 512, 515, 152 A.2d 639 (1959); see also *Todd* v. *Malafronte,* 3 Conn. App. 16, 23, 484 A.2d 463 (1984). "The basis of our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source. That rule is applicable . . . in any tort case." *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 101–102, 285 A.2d 330 (1971), cert. denied, 404 U.S. 1016, 92 S. Ct. 675, 30 L. Ed. 2d 663 (1972).

In the present case, the trial court determined that the defendants' negligence resulted in an immediate loss to the plaintiff of $60,000, the value of the policy that should have been in effect at the time of the fire. In a case such as this, the plaintiff's damage is the amount that would have been recovered under the policy. *Ursini* v. *Goldman,* supra, 563. The subsequent agreement between the plaintiff and Pascale for sale of the property at the original sales price is completely independent from and collateral to the defendants' acts of negligence and resulting damage liability.

This court has applied the collateral source rule in a negligence action against an insurer who failed to procure insurance. In *Todd* v. *Malafronte,* supra, the insurer had incorrectly informed the insured that she did not need workers' compensation coverage for her employees. She sued the insurer, after she settled a workers' compensation claim instituted against her by a part-time employee, claiming that the insurer was negligent in his misrepresentations to her. The defend-

ant challenged the exclusion of testimony that the plaintiff had received payment for her loss from another source. This court held that the collateral source rule was operable and that "benefits received by a plaintiff from a source wholly collateral to and independent of the tortfeasor will not diminish the damages otherwise recoverable." Id.

"Generally, there is no prohibition as to a plaintiff's recovery from another, perhaps parallel but separate source even where he has no net loss from an injury . . . . It is clear, however, that the origination of such payments must be from a source unconnected with the wrongdoer." *Ekblade* v. *Anderson,* 28 Conn. Sup. 177, 179, 255 A.2d 865 (1969), citing *Hudson* v. *Lazarus,* 217 F.2d 344, 346, 95 App. D.C. 16 (1954); see also *Lashin* v. *Corcoran,* supra; *Todd* v. *Malafronte,* supra. In this case, the defendants were not connected to the transaction between the plaintiff and Pascale, and they cannot reap the benefits of the plaintiff's successful renegotiation for the sale of the property.

The defendants' argument that the plaintiff sustained a windfall from her recovery of the $60,000 value of the insurance policy is unpersuasive given the rationale of the collateral source rule. "The reason for the rule . . . is that a 'windfall' ought not to be granted to a defendant. . . . 'If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his responsibility for his wrongdoing.' " *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 580, 271 A.2d 94 (1970), quoting *Grayson* v. *Williams,* 256 F.2d 61, 65 (10th Cir. 1958); see also *Ekblade* v. *Anderson,* supra. In this case, the trial court determined that the plaintiff suffered a $60,000 loss as a result of the defendants' negligence. Any windfall resulting to the plaintiff was unrelated to the defendants and cannot be used to mitigate their damage liability.

The trial court held both defendants jointly and severally liable on the negligence claim, and the defendant agency liable on the breach of contract claim. Because the defendants concede that the plaintiff is entitled to the return of her deposit, the only additional damages awarded against the agency for its breach of contract, we need not address that portion of the award. Our decision on the first issue, therefore, is dispositive.[3]

There is no error.

In this opinion the other judges concurred.

---

[3] The defendants also contend that the plaintiff suffered no damages as a result of the breach of contract by the defendant agency on the basis of the same argument as that made for the negligence claim. We note that this argument is without merit. Our Supreme Court has held that in claims for damages resulting from breach of contract, damages must be measured as of the date of the breach. *Vines* v. *Orchard Hills, Inc.,* 181 Conn. 501, 513, 435 A.2d 1022 (1980); *Levesque* v. *D & M Builders, Inc.,* 170 Conn. 177, 183, 365 A.2d 1216 (1976); *Spera* v. *Audiotape Corporation,* 1 Conn. App. 629, 633, 474 A.2d 481 (1984). "The fact that the value of the property may have increased in the interim between the breach and the time of trial is of no relevance." *Levesque* v. *D & M Builders, Inc.,* supra.