JOSEPHINE RAMETTA *v.* CONRAD A. STELLA ET AL.
(13784)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 31—decision released April 10, 1990

*Robert M. Shields, Jr.,* with whom were *Jeffrey A. Hoberman* and, on the brief, *Wesley W. Horton,* for the appellants (defendants).

*Michael P. Barry,* for the appellee (plaintiff).

COVELLO, J. This is an appeal from the decision of the Appellate Court affirming a judgment of the trial court, *Maloney, J.,* that the defendants Conrad A. Stella (Stella) and Stella Insurance Agency, Inc. (agency), were negligent in failing to obtain fire insurance on the plaintiff's property, and that the agency breached its contract with the plaintiff to provide that insurance. The trial court awarded the plaintiff $60,300 in damages. The issues certified on appeal are: (1) in a tort action, does the collateral source rule apply to proceeds received by the plaintiff which are not payments of compensation for the plaintiff's injury or loss; and (2) in a contract action, must the calculation of the plaintiff's damages consider the effect of the third party sales agreement entered into subsequent to the breach, which would diminish the plaintiff's actual loss. We answer both questions in the negative, and we affirm the decision of the Appellate Court.

The trial court found the following: The plaintiff owned certain real property on Rocky Hill Avenue in New Britain that consisted of ten lots and a 235 year

old house which had been divided into three apartments. The defendant Stella was a licensed insurance agent and broker, and was the president and principal stockholder of the defendant agency. The plaintiff had used Stella as her insurance agent for many years. In the past Stella had obtained insurance on several properties owned by the plaintiff, including the Rocky Hill Avenue property. The plaintiff customarily would consult Stella about the amount of coverage to obtain, and then follow his recommendation. Typically, Stella selected the insurance company for the plaintiff from among several that he represented. The plaintiff left the choice of insurer entirely within Stella's discretion. The plaintiff customarily paid all insurance premiums to the agency, after the defendants had already advanced the amount due to the insurance company and had obtained the policy for the plaintiff. Stella then would either bill the plaintiff or visit her at her home in Old Lyme to collect the amount due.

In March or April, 1986, the plaintiff met with Stella at the agency office and told him that she was considering selling the Rocky Hill Avenue property. At that time the property was insured for $60,000 against loss by fire under a policy issued by the Terra Nova Insurance Company, Ltd. On March 29, 1986, the defendants received a copy of a notice from the Terra Nova Insurance Company, addressed to the plaintiff, that stated that the policy would not be renewed after its expiration on May 6, 1986. On May 2, 1986, the plaintiff went to the agency and met with the office manager, Maria Stella. The plaintiff told Ms. Stella that she had a buyer, Frank Pascale, for the property, and that she wanted insurance coverage to protect her interest until the closing date.[1] The plaintiff paid $300 as a

---

[1] The plaintiff executed a bond for deed under which she agreed to sell the 319 Rocky Hill Avenue property to Pascale for $190,000, and in which she agreed to assume the risk of any loss due to fire until the closing date,

deposit for the insurance and stated that she would pay the balance when the exact amount due was determined. Ms. Stella gave the plaintiff a receipt that stated "Dep. for pol. to be ordered for 319 Rocky Hill Ave. Fire Ins."

After the May 2, 1986 meeting with the plaintiff, Stella unsuccessfully attempted to obtain $60,000 coverage on the property from one of the various insurance companies that the agency represented. The defendants then, as a last resort, applied for coverage to the Connecticut Insurance Placement Facility (Fair Plan), a pool of insurers that provides coverage for risks that are uninsurable on a direct basis. On June 11, 1986, Fair Plan sent an approval notice to the defendants, which the defendants received on June 12. The plaintiff's notice of approval was sent to the 319 Rocky Hill Avenue address, which was the address the agency had indicated on the application as the location of the property. The defendants knew that the plaintiff did not reside at 319 Rocky Hill Avenue, yet they had not included any other mailing address for her and thus, she never received this notice.

The approval notice stated that Fair Plan would provide fire insurance coverage in the amount of $60,000 for a premium of $650.[2] The agency never paid the Fair Plan premium.[3] Stella never told the plaintiff that the agency was departing, in this instance, from its customary practice of advancing the required pre-

July 31, 1986. The plaintiff further agreed to maintain insurance on the property, and in the event that the building was destroyed by fire, any insurance proceeds would be paid to Pascale. The agreement also provided that if there was no insurance in force at the time of a fire, the sales price would be reduced by the insured value of the prior insurance policy.

[2] The premium shown on the agency's notice was $585. The difference represented the agency's commission.

[3] The agency, without informing the plaintiff, applied the $300 deposit that the plaintiff had paid on May 2, 1986, to unrelated charges owed by the plaintiff.

miums to the insurer. Because the premium was never paid, no insurance was issued by Fair Plan, and the property remained uninsured without the plaintiff's knowledge.[4] On July 4, 1986, the house at 319 Rocky Hill Avenue was destroyed by fire. Damage to the building exceeded $60,000.

After the fire, the plaintiff refused to sell the property to Pascale, and Pascale brought suit against her, seeking specific performance of their contract. On October 3, 1986, the plaintiff reached a new agreement with Pascale, whereby he agreed to withdraw his suit, and she agreed to sell the property for the original sales price of $190,000. The plaintiff also agreed to institute an action against the defendants for their failure to obtain insurance on the property and to divide the proceeds of any recovery with Pascale.

The plaintiff then brought the present action against the defendants in two counts, claiming: (1) that both defendants were negligent in failing to obtain insurance on the property; and (2) that the defendant agency breached its contract to obtain insurance on the property. On July 21, 1988, the trial court found the defendants jointly and severally liable on the negligence count and found the agency liable on the breach of contract count. The trial court then awarded $60,000 in damages on the negligence count and, in the alternative, $60,300 damages on the contract count.[5]

---

[4] During the period from May 2, 1986, to July 4, 1986, the defendants did not communicate with the plaintiff.

[5] That figure represents the $60,000 the plaintiff would have received had the policy been in effect at the time of the fire and the $300 deposit the plaintiff had given to the defendant agency to be applied toward the purchase of an insurance policy. The trial court specifically found that $60,000 in damages was attributable to the defendants' negligence, and that $60,300 in damages was attributable to the defendant agency's breach of contract.

The defendants appealed to the Appellate Court, claiming that the trial court had erred in concluding that the plaintiff had suffered actual loss, inasmuch as she had obtained the same price for her property after it had been damaged by fire as she would have obtained before the fire occurred. In *Rametta* v. *Stella,* 19 Conn. App. 223, 562 A.2d 67 (1989), the Appellate Court affirmed the trial court's judgment. The Appellate Court concluded that the defendants' negligence resulted in an immediate loss to the plaintiff of the value of the fire insurance policy that should have been in effect at the time of the fire. The Appellate Court further concluded that the plaintiff's subsequent renegotiation of the agreement to sell the property was completely independent of and collateral to the defendants' acts of negligence and their resulting liability. The defendants filed a petition for certification to appeal to this court, which we granted, limited to the certified issues previously stated.

An action against an insurance agent for failure to obtain insurance may be brought under a theory of either negligence or breach of contract. *Ursini* v. *Goldman,* 118 Conn. 554, 559–60, 173 A. 789 (1934). The measure of the plaintiff's damages is the amount that should have been recovered under the policy. Id., 563. In the present case, the trial court determined that the defendants' negligence resulted in an immediate loss to the plaintiff of $60,000, i.e., the value of the policy that should have been in effect at the time of the fire.

Under the collateral source rule, "a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly independent of him." *Lashin* v. *Corcoran,* 146 Conn. 512, 515, 152 A.2d 639 (1959); *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 579, 271 A.2d 94 (1970). "The basis

of our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source. That rule is applicable . . . in any tort case." *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 101–102, 285 A.2d 330 (1971), cert. denied, 404 U.S. 1016, 92 S. Ct. 675, 30 L. Ed. 2d 663 (1972).

The defendants argue that the proceeds from the renegotiated contract for the sale of the subject property are not a "payment" for such injuries or damages within the meaning of the collateral source rule, and therefore, they should be credited against the loss suffered by the plaintiff. We agree that the collateral source rule is inapplicable to the proceeds received by the plaintiff but disagree that there must therefore be a different result in this case. The types of payments that typically come within the collateral source rule include insurance proceeds, medical benefits, and payments made by an employer pursuant to a statutory compensation scheme. See, e.g., *Gorham* v. *Farmington Motor Inn, Inc.,* supra; see also *Apuzzo* v. *Seneco,* 178 Conn. 230, 233, 423 A.2d 866 (1979); *Healy* v. *White,* 173 Conn. 438, 448, 378 A.2d 540 (1977).

We decline to extend the application of the collateral source rule to encompass the proceeds received by the plaintiff from the subsequent sale of her property. The subsequent sales agreement between the plaintiff and Pascale for the sale of the property at the original sales price was a completely independent act that was wholly unrelated and irrelevant to the defendants' negligence and the damages that thereafter followed. The sales proceeds did not reimburse the plaintiff for the $60,000 she would have received from an insurer had the appropriate policy been in force, but in fact reflected the parties' perception of the fair market value of the property regardless of the fire. Had her property been insured by the defendants, the plaintiff would still have been

in a position to renegotiate her sales agreement, and she would have been free to dispose of the insurance proceeds in any manner she desired. " '[W]hat the plaintiff does with an award . . . is of no concern to the court . . . . ' " *Gorham* v. *Farmington Motor Inn, Inc.,* supra, 581; see also *Conestoga Chemical Corporation* v. *F. H. Simonton, Inc.,* 269 A.2d 237, 240 (Del. 1970).

The plaintiff suffered an actual economic loss that was not compensated by the proceeds of the subsequent sale of her property. While the proceeds from the subsequent sale of the property, a sale that was renegotiated after the destruction of the property, do not qualify as a payment within the ambit of the collateral source rule,[6] they are nonetheless so remote and unrelated to the insurance transaction and the defendants' negligent acts, that to apply them to relieve the defendants of liability for the resulting damages would result in an unconscionable windfall for the defendants. " ' "If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his responsibility for his wrongdoing." ' *Gorham* v. *Farmington Motor Inn, Inc.,* [supra, 580], quoting *Grayson* v. *Williams,* 256 F.2d 61, 65 (10th Cir. 1958); see also *Ekblade* v. *Anderson,* [28 Conn. Sup. 177, 179, 255 A.2d 865 (1969)]." *Rametta* v. *Stella,* supra, 229.

The agency further argues that the subsequent sale of the plaintiff's property must be considered in determining whether the plaintiff has suffered any actual

---

[6] Although we will ordinarily consider certified issues in the form in which they have been framed in the Appellate Court, "we are not limited to the issues presented in the petition if the judgment of the Appellate Court may be affirmed on some other ground." *State* v. *Hodge,* 201 Conn. 379, 384, 517 A.2d 621 (1986); see also *Nardini* v. *Manson,* 207 Conn. 118, 119, 119–20 n.1, 540 A.2d 69 (1988); *State* v. *Torrence,* 196 Conn. 430, 433, 434 n.5, 493 A.2d 865 (1985).

loss arising from the breach of contract. The defendant specifically asserts that in entering into the renegotiated sales agreement, the plaintiff was simply discharging her legal duty to mitigate damages. See *West Haven Sound Development Corporation* v. *West Haven,* 201 Conn. 305, 332, 514 A.2d 734 (1986); *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 85, 491 A.2d 363 (1985).

The rights of the parties to an insurance contract are determined at the time or moment the loss is sustained, and damages are measured as of the date of the breach. *West Haven Sound Development Corporation* v. *West Haven,* 207 Conn. 308, 317, 541 A.2d 858 (1988); *Vines* v. *Orchard Hills, Inc.,* 181 Conn. 501, 513, 435 A.2d 1022 (1980); *Levesque* v. *D & M Builders, Inc.,* 170 Conn. 177, 181, 365 A.2d 1216 (1976); *Spera* v. *Audiotape Corporation,* 1 Conn. App. 629, 633, 474 A.2d 481 (1984). In this instance, the plaintiff's damages were fixed at the moment that the fire loss exceeded the $60,000 value of the policy. Since both the loss and the subsequent damages were fixed at that time, there was nothing the plaintiff could do further to mitigate them. The concept of mitigation of damages presupposes that an injured party has one or more courses of conduct available at or after the time a breach occurs and an obligation therefore exists to pursue that course that results in the least damages to the offending party. See generally 3 Restatement (Second), Contracts § 350 (1981), and the accompanying comments.

The general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed. *Vespoli* v. *Pagliarulo,* 212 Conn. 1, 3, 560 A.2d 980 (1989); *West Haven Sound Development Corporation* v. *West Haven,* 207 Conn. 308, 317, 541 A.2d 858 (1988); *Danpar Associates* v. *Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 446,

438 A.2d 708 (1980); *Johnson* v. *Healy,* 176 Conn. 97, 105, 405 A.2d 54 (1978); *Bachman* v. *Fortuna,* 145 Conn. 191, 194, 141 A.2d 477 (1958); see also 3 Restatement (Second), Contracts §§ 344 (a), 347 (a) and (b), and comments contained therein. In this instance, had the contract been performed, the plaintiff would have received $60,000 from an insurer, to dispose of at her discretion. The fact that the plaintiff thereafter fortuitously renegotiated her contract with Pascale, in effect entering into a new agreement with him, is irrelevant to the amount of damages that were previously determined. *Levesque* v. *D & M Builders, Inc.,* supra, 183; see also *Milwaukee Mechanics Ins. Co.* v. *Maples,* 37 Ala. App. 74, 85, 66 So. 2d 159, cert. denied, 259 Ala. 189, 66 So. 2d 173 (1953); *Nahmias Realty, Inc.* v. *Cohen,* 484 N.E.2d 617, 622 (Ind. App. 1985); see also 3 Restatement (Second), Contracts § 347, comment b.

The decision of the Appellate Court is affirmed.

In this opinion the other justices concurred.