## EILEEN ALVARADO *v.* CRAIG BLACK
## (SC 16044)

Callahan, C. J., and Berdon, Norcott, Katz and Peters, Js.

Argued January 15—officially released April 13, 1999

*Morris R. Borea*, for the appellant (plaintiff).

*Timothy P. Pothin,* with whom, on the brief, were *Ronald J. Cohen, Eric Jones* and *Charles Platto,* for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. The sole issue in this appeal is whether, pursuant to General Statutes § 52-225a,[1] an injured plaintiff, whose economic damages are reduced because of the collateral source doctrine, is entitled to an offset from that reduction to reflect insurance premiums paid by the employer of the injured party. We conclude that such an offset is proper and reverse the judgment of the trial court.

The following facts and procedural history are undisputed. On May 11, 1994, the plaintiff, Eileen Alvarado,

[1] General Statutes § 52-225a provides: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

and the defendant, Craig Black, were involved in a motor vehicle accident. Thereafter, the plaintiff brought this action against the defendant, alleging that she had sustained economic and noneconomic injuries as a result of the accident and that the defendant's negligent conduct had caused her injuries. The only evidence the plaintiff presented to support her claim for economic damages consisted of medical bills in the amount of $3109.69. The jury returned a verdict in favor of the plaintiff and awarded her exactly that amount in economic damages and $4000 in noneconomic damages, for a total award of $7109.69.

The plaintiff moved to set the verdict aside and for an additur. Those motions were denied. The defendant then moved for a posttrial hearing, pursuant to § 52-225a, seeking to have the jury's economic damages award reduced by the amount of medical expenses that had been paid by the plaintiff's health insurance carrier (insurer).

At the posttrial hearing, the defendant argued that, because the plaintiff's claim for economic damages had been based exclusively on the medical expenses that she had incurred as a result of the accident, and because those expenses had been paid in their entirety by her insurer, General Statutes §§ 52-225a and 52-225b[2] entitled him to a reduction of the economic damages award to zero dollars. Without contesting the accuracy of the defendant's description of the source of her economic

---

[2] General Statutes § 52-225b provides: "For purposes of sections 52-225a to 52-225c, inclusive: 'Collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. 'Collateral sources' do not include amounts received by a claimant as a settlement."

damages, the plaintiff sought an offset from such reduction. She introduced evidence that her health insurance premiums in the amount of $3207.59 had been paid by her employer during the period in which she had incurred medical expenses as a result of the accident.[3] She therefore maintained that, pursuant to § 52-225a (c), she was entitled to offset by that amount any reduction in economic damages because of collateral source payments, thereby negating any reduction in her economic damages. Rejecting the plaintiff's offset claim, the trial court granted the defendant's motion for reduction of the plaintiff's economic damages award by $3109.69, the amount of medical expenses paid by the plaintiff's health insurer, and rendered judgment in favor of the plaintiff, awarding her zero dollars in economic damages and $4000 in noneconomic damages, for a total award of $4000. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

On appeal, the plaintiff argues that the trial court incorrectly concluded that the defendant was entitled to a reduction of the jury's award of economic damages. Specifically, she maintains that, although § 52-225a (a) and (b) require that the award of economic damages be reduced by the amount of collateral source payments she had received for treatment of her injuries, § 52-225a (c) requires that any amount that was paid as premiums to secure the collateral source payments be offset against the collateral source payments in calculating economic damages. Consequently, she claims that, in calculating the reduction of the jury's economic damages award, the trial court improperly failed to offset the $3207.59 in premiums her employer had paid to obtain her health insurance coverage against the

---

[3] The defendant did not dispute that amount, either in the trial court or before this court.

$3109.69 in collateral source payments made by her health insurer. We agree.

Section 52-225a (a), which sets forth the statutory scheme relating to the calculation of collateral source reductions, provides in relevant part that "[i]n any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section *less the total of amounts determined to have been paid under subsection (c) of this section* . . . ." (Emphasis added.) Thus, under § 52-225a (a), calculation of the collateral source reduction is a two part process: (1) the total amount of collateral source benefits a claimant has received is determined in accordance with § 52-225a (b); and (2) that amount is then decreased, pursuant to § 52-225a (c), by the total amount that has been "paid, contributed, or forfeited . . . by, or on behalf of, the claimant or members of his immediate family" to secure those benefits.

Section 52-225a (b), which sets forth the manner in which the total amount of collateral source benefits a claimant has received is determined, provides in relevant part that "the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment." Section 52-225b defines collateral sources as "any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance . . . ." Because collateral source payments are defined to include payments made to, or

on behalf of, a claimant pursuant to the claimant's health insurance policy, the payments made by the plaintiff's health insurer constitute collateral source payments within the meaning of § 52-225b. Consequently, those payments properly may be included in the first step of the calculation of the amount by which the defendant is entitled to a reduction of the jury's economic damages award.

The second step in the calculation of the collateral source reduction is governed by § 52-225a (c), which permits a claimant to offset the amount of collateral source payments the claimant has received by "any amount which has been paid . . . by, or on behalf of, the claimant or members of his immediate family to secure [the claimant's] right to [the] collateral source benefit . . . ." The plaintiff maintains that § 52-225a (c) entitles her to offset the collateral source reduction attributable to the payments made by her insurer by the amount paid by her employer to purchase her health insurance coverage. The defendant maintains, however, that § 52-225a (c) does not apply to the health insurance premiums paid by the plaintiff's employer. In the defendant's view, § 52-225a (c) encompasses only health insurance premiums "the plaintiff, a family member, or some other personal representative actually paid . . . out of pocket which the plaintiff was required to pay." We agree with the plaintiff.

We begin our analysis by noting that interpretation of § 52-225a is a matter of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation

and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *General Motors Corp.* v. *Dohmann*, 247 Conn. 274, 286, 722 A.2d 1205 (1998); *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 195, 708 A.2d 1371 (1998).

"As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." *In re Baby Z.*, 247 Conn. 474, 498, 724 A.2d 1035 (1999); *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 102, 680 A.2d 1321 (1996). As previously noted, § 52-225a (c) permits a plaintiff to offset the amount of a reduction for collateral source benefits the plaintiff has received by "any amount which has been paid, contributed, or forfeited . . . *by, or on behalf of*, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death." (Emphasis added.) Thus, the language of § 52-225a (c) manifests the legislature's intention to permit a claimant to offset a reduction for collateral source benefits received from the claimant's health insurance carrier by premiums *the claimant* paid to obtain health insurance coverage. See *Fleming* v. *Garnett*, 231 Conn. 77, 94, 646 A.2d 1308 (1994). Moreover, the inclusion of the phrase "on behalf of" in § 52-225a (c) demonstrates that payment of insurance premiums need not be made directly by the claimant or by members of the claimant's immediate family. Instead, that language clearly indicates that the legislature intended to provide claimants with an offset for premium payments made indirectly by the claimant or indirectly by the members of the claimant's immediate family.

The payments an employer makes to purchase health insurance for an employee are not gratuitous.[4] Instead,

---

[4] We express no opinion as to whether § 52-225a (c) permits claimants an offset for insurance premiums gratuitously paid by a party unrelated to the claimant.

those payments are made as part of the employee's compensation. Because an employer's premium payments are really indirect payments by the employee,[5] we conclude that the legislature intended that § 52-225a (c) encompass premiums paid by a claimant's employer to purchase the claimant's health insurance coverage. Otherwise, the words "on behalf of" in § 52-225a (c) would have no meaning. See *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 303, 695 A.2d 1051 (1997).

The legislative history of § 52-225a, moreover, buttresses our conclusion regarding employer-paid health insurance premiums. Prior to the enactment of § 52-225a in 1985, Connecticut adhered to the common-law collateral source rule, which provides that "a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly independent of him. . . . The basis for our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source." (Citations omitted; internal quotation marks omitted.) *Rametta* v. *Stella*, 214 Conn. 484, 489–90, 572 A.2d 978 (1990). In 1985, however, the legislature by enacting Public Acts 1985, No. 85-574 (P.A. 85-574), abolished the common-law collateral source rule in medical malpractice actions. Public Act 85-574, which was codified as § 52-225a, provided in relevant part: "In any action for damages for personal injury or wrongful death filed

---

[5] An American Law Institute Reporters' Study on the collateral source rule recognized that "employees often pay indirectly (by accepting lower wages) for insurance that is provided as a fringe benefit of employment . . . ." A.L.I., 2 Reporters' Study, Enterprise Responsibility for Personal Injury (1991) p. 171. The Reporters' Study recommended that "those who have directly or indirectly [by accepting lower wages] paid premiums for private insurance benefits that reduce the amount of their recovery should be given a credit equal to the amount of premiums paid for these benefits during the two years immediately preceding injury." Id., pp. 176–77.

on or after October 1, 1985, whether in tort or in contract, arising out of the rendition of professional services by a health care provider in which liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award by the total of all amounts paid to the claimant from all collateral sources which are available to him . . . [and] shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant. The court shall also take testimony of *any amount which has been paid, contributed, or forfeited by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he is receiving as a result of such injury or death,* and shall offset any reduction in the award by any such amount." (Emphasis added.)

The language of P.A. 85-574 that is now codified at § 52-225a (c) has remained unchanged in relevant part since its enactment in 1985. In 1986, however, § 52-225a was extended by No. 86-338, § 4, of the 1986 Public Acts to abolish the common-law collateral source rule in all personal injury actions. In 1987, § 52-225a was amended again by No. 87-227, § 4, of the 1987 Public Acts (P.A. 87-227). Public Act 87-227, § 4, divided § 52-225a into subsections and made clarifying changes. See 30 H.R. Proc., Pt. 16, 1987 Sess., p. 5664, remarks of Representative Richard D. Tulisano.

The language and legislative history of § 52-225a clearly indicate that § 52-225a was intended to prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral source payments. See 28 H.R. Proc., Pt. 27, 1985 Sess., p. 9820, remarks of Representative Morag L. Vance; id., p. 9834, remarks of Representative Joseph D. Nardini; Conn. Joint Standing Committee

Hearings, Judiciary, Pt. 6, 1985 Sess., p. 1909, remarks of Senator Richard B. Johnston; 29 S. Proc., Pt. 10, 1986 Sess., p. 3442, remarks of Senator Johnston; 29 H.R. Proc., Pt. 22, 1986 Sess., pp. 8074–76, remarks of Representative Robert G. Jaekle. There is nothing inconsistent, however, between the statutory purpose of preventing double recoveries and an interpretation of § 52-225a (c) that permits plaintiffs an offset for premium payments that they or members of their family have made indirectly to obtain health insurance coverage. If the premiums had not been paid, there would have been no collateral source payments to reduce liability for economic damages.

Moreover, during its discussions of the bills that produced §§ 52-225a and 52-225b, the latter of which defines collateral sources, the legislature explicitly recognized that employees indirectly pay for insurance coverage provided by their employers. See, e.g., 29 S. Proc., Pt. 10, 1986 Sess., pp. 3429–33, remarks of Senators Reginald J. Smith and Anthony V. Avallone (employees receive less in wages in return for employer-paid medical benefits); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1987 Sess., p. 452, remarks of Representative Edith G. Prague (same). Consequently, an interpretation of § 52-225a (c) that did not permit claimants an offset for employer-paid health insurance premiums would contravene both the statutory language and the legislative history of §§ 52-225a and 52-225b.

To summarize, § 52-225a (c) permits claimants to offset any collateral source benefits paid by the claimant's health insurance carrier by the amount of premiums paid by the claimant, directly or indirectly to obtain benefits. Payments made by a claimant's employer to purchase the claimant's health insurance constitute

indirect payments on the claimant's behalf. Consequently, in the calculation of the collateral source reduction of the jury's award of economic damages, the plaintiff was entitled to an offset for the amount of premiums her employer had paid on her behalf to purchase her health insurance.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the plaintiff in the amount of $7109.69.

In this opinion the other justices concurred.