[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#113)
 FACTS
On April 12, 2000, the plaintiff, Newcourt Communications Finance Corporation, filed a one count complaint against the defendant, Kirby J. Best, seeking payment under a guarantee agreement. On August 4, 2000, the defendant filed an answer and five special defenses. Presently before the court is the plaintiff's motion for summary judgment filed on June 16, 2000.
The following facts are undisputed. On October 17, 1995, Royal Book CT Page 2049 Manufacturing, Inc. (Royal Book), through the defendant, entered into a master lease agreement with the plaintiff's predecessor in interest, ATT Credit Corporation of Parsippany, New Jersey (ATT Credit Corporation).[1] This agreement provided the terms whereby Royal Book leased telephone equipment purchased by ATT Credit Corporation from ATT of Williston, Vermont. The defendant signed a guarantee agreement with the plaintiff on October 9, 1995. Under the terms of the agreement, the defendant agreed to guarantee payment of all sums due, under the lease agreement, in the event that Royal Book defaulted. Royal Book entered into two schedules for payment on the equipment it leased from the plaintiff. The schedules are dated October 17, 1995 and October 31, 1995 respectively.
Under the terms of the October 17, 1995 schedule, Royal Book was bound to pay thirty-six consecutive monthly payments of $2451.35. Under the terms of the October 31, 1995 schedule, Royal Book was bound to make thirty-five consecutive monthly payments of $801.49. In February, 1998, Royal Book defaulted on payments under both of the schedule agreements. After the default, the plaintiff accelerated the debt and declared the entire amount immediately payable. The defendant has not paid any of the amount that Royal Book owed, as was required by the terms of the guarantee agreement.
On June 16, 2000, the plaintiff filed this motion for summary judgment on the ground that there is no material issue of fact regarding the defendant's liability for Royal Book's debt or for the amount that is owing. The plaintiff also argues that the special defenses asserted by the defendant are not supported by the law or the facts of this case. With its motion, the plaintiff filed a supporting memorandum of law, the affidavit of Thomas F. Papp, senior litigation specialist for the plaintiff, an unauthenticated copy of the master lease agreement, unauthenticated copies of the two schedules executed for payment, an unauthenticated copy of the guarantee agreement signed by the defendant, and an unauthenticated copy of the certificate of commencement.
The defendant filed a memorandum in opposition on October 16, 2000. With his memorandum, the defendant also filed unauthenticated correspondence from the plaintiff to the defendant dated March 10, 2000 and an unauthenticated copy of the business cards given to the defendant by employees of ATT Credit Corporation and ATT of Williston, Vermont. The plaintiff filed a reply brief on October 18, 2000.
 DISCUSSION
"[S]ummary judgment shall be rendered forthwith if the pleadings, CT Page 2050 affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . ." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a material fact." Miles v. Foley, 253 Conn. 381, 386,752 A.2d 503 (2000).
In its motion and reply brief, the plaintiff argues that summary judgment is proper in this case because there remain no material issues of fact regarding the liability of the defendant under the lease and guarantee agreements. The plaintiff also argues that the affidavit of Thomas Papp is sufficient, absent the submission of proof to the contrary, to show the amount of the debt.
The defendant counters that there are material issues of fact regarding the exact amount of money that is owed to the plaintiff.[2] The defendant argues that, because Royal Book made over two years of payments to the plaintiff, as was required under the schedule agreements, the total amount the plaintiff claims is due in its complaint should be less than the full amount that Royal Book would have paid to the plaintiff, had it made all payments to the plaintiff, without the default. The complaint alleges that $115,507 is owed on the debt after subtracting payments made by Royal Book through February 1998. A computation of the amount due under the schedule agreements reveals that, had Royal Book made all payments as required by the schedules, a total of $113,021 would have been due and owing. The defendant further points out that the amount requested in the complaint, $115,507, does not match the amount that the plaintiff claims it is owed in the Papp affidavit. The affidavit states that $112,031 is owed. Based on this information, the defendant argues that the affidavit of Thomas Papp does not adequately apprise the court of the amount of the debt that is owing.[3]
In this instance, while the plaintiff has submitted the affidavit of Thomas Papp, which recites the amount of debt the plaintiff alleges is due, the documentation provided to the court does not adequately disclose if the payments Royal Book made prior to February 1998 were credited to the account. The lone affidavit also fails to disclose the amount of interest or fees that the plaintiff is seeking. Therefore a material CT Page 2051 issue of fact does exist as to the amount of damages the plaintiff is owed and summary judgment cannot render on the issue of damages.
In support of its motion for summary judgment on the defendant's liability, the plaintiff argues that the second and third special defenses asserted by the defendant were waived by the terms of paragraphs fourteen[4] and fifteen of the master lease agreement[5] and paragraph three of the guarantee agreement.[6] Based on these contractual clauses, the plaintiff argues that there is no material issue of fact as to the defendant's second and third special defenses and judgment should render as a matter of law.
The defendant does not directly respond to the plaintiff's argument, but asserts that he believed that ATT Credit Corporation and ATT of Williston, Vermont were the same entity and, because the plaintiff failed to inform the defendant that the corporations were separate entities, the plaintiff should be bound by the warranty representations made by ATT of Williston, Vermont under an apparent agency theory. In support of this argument, the defendant has supplied an uncertified copy of a business card from an employee at ATT Credit Corporation and of an employee at ATT of Williston, Vermont.
In assessing whether the defendant has waived his right to assert warranty claims against the plaintiff and the right to assert special defenses to this action, the court must first determine whether the lease agreement before it is a finance lease or a normal lease agreement because appellate authority governing the interpretation of the two types of leases differs. "In 2 J. White R. Summers, Uniform Commercial Code (4th Ed. 1995) § 13-3b, a statutory [finance] lease is defined as having the following three characteristics: `Finance lease means a lease in which (i) the lessor does not select, manufacture or supply the goods, (ii) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease, and (iii) one of the following occurs: (A) the lessee receives a copy of the contract by which the lessor acquired the goods or the right to possession and use of the goods before signing the lease contract . . . or (D) if the lease is not a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee in writing (a) of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person, (b) that the lessee is entitled under this Article to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the CT Page 2052 goods, and (c) that the lessee may communicate with the person supplying the goods to the lessor and receives an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.'" Datronic Equipment v. HealeyFord-Lincoln, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 055904 (Mar. 5, 1997, Flynn, J.); see also EmleeEquipment Leasing v. Waterbury Transmission Inc., 31 Conn. App. 455,467-68, 626 A.2d 307 (1993).
Applying the three-prong test to this case, the first prong of the test is met because the certificate of commencement, signed on October 30, 1995, states, in paragraph e, that Royal Book selected the equipment which was leased. The second prong of the test is met because paragraph twelve of the lease agreement provides that "the Equipment shall at all times remain the property of Lessor and Lessee shall have no right, title or Interest therein." The last prong of the test is met because the plaintiff has supplied a copy of the lease agreement executed by Royal Book which expressly states, in paragraph two, that "[b]y executing this applicable Schedule, Lessee represents and warrants that Lessee either (y) has reviewed, approved and received a copy of the applicable Purchase Documents or (z) has been informed by Lessor (i) of the identity of the Seller, (ii) that Lessee may have rights under the Purchase Documents and (iii) that Lessee may contact Seller for a description of such rights." Thus the lease has all of the elements of a finance lease as detailed inDatronic Eouipment v. Healey Ford-Lincoln, supra, Docket No. 055904. Therefore, because there is no argument to the contrary submitted by either party, the court will interpret the agreement as a finance lease.
The Appellate Court noted that, in a finance lease, "[t]he parties can draft a lease agreement that carefully excludes warranty and promissory liability of the finance lessor to the lessee, and that sets out what is known in the trade as a `hell or high water clause,' namely, a clause that requires the lessee to continue to make rent payments to the finance lessor even though the [equipment] is unsuitable, defective, or destroyed. How the lessee is to be assured that it will enjoy the benefit of the promises and warranties made by the manufacturer may be less obvious, but that too can be accomplished by agreement through a clause in the agreement between the manufacturer and the finance lessor to the effect that the warranties and other promises in that agreement will run to the benefit of the lessee. Thus the finance lessee becomes a third party beneficiary of the contract between the supplier and the finance lessor." Emlee Equipment Leasing v. Waterbury Transmission Inc., supra,31 Conn. App. 467, quoting 1 A J. White R. Summers, Uniform Commercial Code (3d Ed. 1988) p. 20. CT Page 2053
In this instance, there is no material issue of fact created by any of the warranty claims the defendant makes in its second and third special defenses, because paragraph fifteen of the lease agreement clearly provides that Royal Book has waived all of its warranty claims against the plaintiff. The defendant is bound to Royal Book's waiver under paragraph three of the guarantee agreement[7] where he waived the right to assert any special defenses, against the plaintiff, in the event of Royal Book's default. As the contract before the court is a finance lease, the defendant has failed to raise a defense to the plaintiff's claim that he waived his right to assert a warranty claim against the plaintiff and, because lessors and lessees are free to negotiate the waiver of warranties in such finance lease agreements, the court finds that the defendant has waived all of his rights to assert special defenses based on any breach of warranty claims.
In this light, the defendant's argument about the apparent agency of ATT Credit Corporation and ATT of Williston, Vermont is equally unavailing. Even if the court were to determine that there was a material issue of fact regarding the apparent agency of the corporations and the sufficiency of the defendant's waiver under the guarantee agreement, the defendant has failed to submit any evidence which would suggest that either ATT of Williston, Vermont or ATT Credit Corporation actually made any representations or warranties regarding the suitability of the telephone equipment for Royal Book's purposes. In the absence of evidence which shows the existence of these warranties or representations, there is no need for the court to address any argument about an agency relationship between the two and determine if they are mutually liable to the defendant. IBM Credit Corp. v. Mark Facey Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 137113 (March 24, 1995, Karazin, J.) (Where court held that, absent evidence that the lessor made warranty representations about equipment leased under a finance lease, that the lessee is bound by the provisions of the finance lease agreement.)
The defendant lastly argues, under his fifth special defense,[8] that because the plaintiff offered to take back the equipment in August of 1998, but did not attempt to reposes and sell the equipment until March, 2000,[9] the plaintiff failed to mitigate its damages. In support of this argument! the defendant submits a letter signed by Thomas Papp. In that letter, Papp states that the plaintiff intended to sell the equipment repossessed from the defendant at a private sale at any time after March 10, 2000.[10]
In response to this argument, the plaintiff relies on paragraph twenty of the lease agreement, which provides that the plaintiff can, at its CT Page 2054 sole discretion, repossess the equipment it leased to Royal Book and resell that equipment upon Royal Book's default. The plaintiff, therefore, argues that, because it was under no duty to repossess the equipment, that it was under no duty to do so immediately upon the defendant's request. The plaintiff further argues that its repossession of the equipment in March, 2000, and resale of the equipment still accrued funds to the defendant's benefit.
In the context of contracts, the party who seeks damages has the affirmative duty to make reasonable efforts to mitigate those damages.Ann Howard's Apricots Restaurant v. Commission on Human Rights Opportunities, 237 Conn. 209, 229, 676 A.2d 844 (1996). "The concept of mitigation of damages presupposes that an injured party has one or more courses of conduct available at or after the time a breach occurs and an obligation therefore exists to pursue that course that results in the least damages to the offending party." Rametta v. Stella, 214 Conn. 484,492, 572 A.2d 978 (1990). What constitutes a reasonable effort under the circumstances of a particular case is a question for the trier of fact. Id. It is the breaching party who bears the burden of proving that the nonbreaching party has failed to mitigate damages. Id. The plaintiff's duty to mitigate its damages, in this case, does not require that it sacrifice a substantial right of its own in order to minimize the defendant's loss. Camp v. Cohn, 151 Conn. 623, 627, 201 A.2d 187 (1964).
The plaintiff's repossession of the equipment, in March, 2000, over a year after Royal Book's default, creates an interesting question about whether it failed to mitigate its damages, yet, because the defendant has failed to present any evidence that substantiates his claim that the plaintiff's actions decreased the net proceeds from the sale of the equipment or otherwise cost the defendant money, it is a question that the court will not address. Trotta v. Branford, 26 Conn. App. 407, 412,601 A.2d 1036 (1992) ("To establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue.")
In this matter, the plaintiff has submitted the guarantee agreement, the schedules, and the master lease agreement in support of its motion for summary judgment. The plaintiff has also submitted the affidavit of Thomas Papp which establishes that Royal Book defaulted on the terms of the agreement. The defendant has not submitted any evidence which refutes the validity of these documents or otherwise creates a material issue of fact as to his liability under the guarantee agreement. The plaintiff's motion for summary judgment, therefore, will be granted as to the issue of the defendant's liability. CT Page 2055
Where summary judgment is rendered as to liability alone, "the judicial authority shall order an immediate hearing before a judge trial referee, before the court, or before a jury, whichever may be proper, to determine the amount of the damages." Ariel v. Blechman, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 158694 (April 13, 2000, D'Andrea, J.); Arrowhead by the Lake Assn., Inc. v. Arrowhead bythe Lake, Inc., Superior Court, judicial district of Waterbury, Docket No. 128458 (January 21, 1999, West, J.); see also Practice Book §17-50.[11] In this instance because there is a material issue of fact regarding the amount of damages that the defendant owes, the court will order an immediate hearing to determine the amount of damages.
D. Michael Hurley, Judge Trial Referee