CAROL F. JONES *v.* JOYCE O. RILEY
(SC 16704)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

Argued April 25, 2002—officially released April 8, 2003

*John H. Hanks,* for the appellant (defendant).

*David P. Mester,* with whom, on the brief, was *Maria M. Ciotto-Larose,* for the appellee (plaintiff).

*Opinion*

BORDEN, J. This appeal[1] requires that we determine the proper amount by which to offset a reduction of the plaintiff's economic damage award due to certain collateral source payments made under the medical payments coverage provision of the plaintiff's automobile liability insurance policy. Specifically, we must decide whether the plaintiff is entitled to a credit, pursuant to General Statutes § 52-225a (c),[2] for the amount

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 52-225a provides: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other

of premiums paid for the entire policy, or for that portion of the premiums attributable to the medical payments coverage only. We conclude that the plaintiff was entitled to offset the collateral source reduction by the cost of her medical payments coverage only, and, accordingly, we reverse the judgment of the trial court to the contrary.

The relevant factual and procedural history of this case can be summarized as follows. The plaintiff, Carol F. Jones, and the defendant, Joyce O. Riley, were involved in an automobile accident in January, 1998. The plaintiff thereafter brought this action against the defendant, alleging that her negligence was responsible for both the accident and the plaintiff's resulting injuries. The case was tried before a jury, which returned a verdict in favor of the plaintiff totaling $20,743.39. Of that amount, $13,500 represented compensation for the plaintiff's noneconomic damages, and the remaining $7243.39 was attributable to the economic losses incurred by the plaintiff as a result of the accident.

After the trial court had rendered judgment on the verdict, the defendant moved for a collateral source hearing pursuant to General Statutes § 52-572h.[3] For

appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

[3] General Statutes § 52-572h provides: "(a) For the purposes of this section: (1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering; (3) 'recoverable economic damages' means the economic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur, and any reduction provided by section 52-225a; (4) 'recoverable noneconomic damages' means the noneconomic damages reduced by

purposes of that proceeding, the parties stipulated to the following: (1) the plaintiff had purchased medical payments coverage, commonly known as "med pay,"

any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur.

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the

as part of her automobile liability insurance policy from Allstate Insurance Company (Allstate); (2) the plaintiff could not purchase med pay coverage from Allstate

claimant.

"(g) (1) Upon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection. (2) The court shall order that the portion of such uncollectible amount which represents recoverable noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollectible amount. (3) The court shall order that the portion of such uncollectible amount which represents recoverable economic damages be reallocated among the other defendants. The court shall reallocate to any such other defendant an amount equal to such uncollectible amount of recoverable economic damages multiplied by a fraction in which the numerator is such defendant's percentage of negligence and the denominator is the total of the percentages of negligence of all defendants, excluding any defendant whose liability is being reallocated. (4) The defendant whose liability is reallocated is nonetheless subject to contribution pursuant to subsection (h) of this section and to any continuing liability to the claimant on the judgment.

"(h) (1) A right of contribution exists in parties who, pursuant to subsection (g) of this section are required to pay more than their proportionate share of such judgment. The total recovery by a party seeking contribution shall be limited to the amount paid by such party in excess of such party's proportionate share of such judgment.

"(2) An action for contribution shall be brought within two years after the party seeking contribution has made the final payment in excess of such party's proportionate share of the claim.

"(i) This section shall not limit or impair any right of subrogation arising from any other relationship.

"(j) This section shall not impair any right to indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnitee is for indemnity and not contribution, and the indemnitor is not entitled to contribution from the indemnitee for any portion of such indemnity obligation.

"(k) This section shall not apply to breaches of trust or of other fiduciary obligation.

"(l) The legal doctrines of last clear chance and assumption of risk in actions to which this section is applicable are abolished.

without also purchasing the entire automobile insurance policy; (3) the premiums paid for the entire policy totaled $2084.70; (4) the amount of total premiums allocated to the plaintiff's med pay coverage was $80; and (5) Allstate paid $2000 in medical expenses on the plaintiff's behalf.[4]

During the collateral source hearing, the defendant argued that, pursuant to § 52-225a, the plaintiff's economic damage award should be reduced by $2000—the amount expended by Allstate in paying the plaintiff's medical bills—less the $80 in premiums that the plaintiff had paid to procure med pay coverage under the policy. The plaintiff, however, argued that she was entitled to offset the $2000 of collateral source payments not by $80, but rather by $2084.70, which represented the amount of premiums paid for the entire policy. The plaintiff's argument was premised upon the fact that,

"(m) The family car doctrine shall not be applied to impute contributory or comparative negligence pursuant to this section to the owner of any motor vehicle or motor boat.

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section.

"(o) Except as provided in subsection (b) of this section, there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556."

[4] The parties also stipulated that the plaintiff had a health insurance policy through her employer, which paid $938.94 toward the medical expenses the plaintiff had incurred as a result of the accident. The judgment, however, was not reduced by this collateral source payment because it was offset, pursuant to § 52-225a, by the amount of premiums the plaintiff had paid for that policy, namely, $1214.20.

in order to obtain med pay coverage, she was obligated to purchase the entire automobile insurance policy. The trial court agreed that the plaintiff could only "secure her right to the collateral source benefit" at issue by paying "the entire amount of insurance premiums," and, therefore, determined that the "plaintiff [was] entitled to an offset for the entire amount . . . ." The effect of the court's ruling was to cancel out all of the $2000 of medical payments Allstate had made on the plaintiff's behalf. Accordingly, the court rendered judgment in the amount of the original verdict, namely, $20,743.39. This appeal followed.

In this court, the parties essentially reiterate the arguments raised during the collateral source hearing. We conclude that, under § 52-225a, the plaintiff was entitled to offset the collateral source reduction by only $80, which represented that portion of the premiums paid to procure the med pay coverage under the automobile insurance policy.

Determining the proper credit to which the plaintiff is entitled pursuant to § 52-225a raises a question of statutory construction, over which our review is plenary. See *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 439, 797 A.2d 1081 (2002). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, [231 Conn. 418, 431, 650 A.2d 557 (1994)]. In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Bender* v.

*Bender*, [258 Conn. 733, 741, 785 A.2d 197 (2001)]. Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

We thus begin our analysis by recourse to the statutory scheme at issue. Section 52-225a (a) sets forth the method for calculating the amount by which the plaintiff's economic damage award is to be reduced by collateral source payments made in the course of a personal injury or wrongful death action. Section 52-225a (a) provides in relevant part: "In any civil action . . . wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death

. . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section . . . ." Subsection (b) of § 52-225a instructs the court to hear evidence regarding "the total amount of collateral sources . . . paid for the benefit of the claimant . . . ." Subsection (c) of § 52-225a mandates the taking of evidence "concerning any amount which has been paid . . . by, or on behalf of, the claimant . . . to secure his right to any collateral source benefit which he has received as a result of . . . injury or death."

In this appeal, we are concerned primarily with discerning what is meant, in § 52-225a (c), by the "amount . . . paid . . . to secure [the plaintiff's] right" to the benefits awarded by Allstate in accordance with the med pay coverage provision of the plaintiff's automobile insurance policy. By its terms, subsection (c) of § 52-225a contemplates that the claimant will receive a credit for those expenditures that necessarily were made in order to obtain the specific benefit at issue. Here, the parties stipulated that $80 of the total premiums paid for the insurance policy were allocated to med pay coverage; because the only collateral source benefit that the plaintiff received as a result of the accident was med pay, the statutory language suggests that only that amount expended by the plaintiff to procure med pay coverage should be used to offset the reduction in her economic damage award.

The contrary interpretation suggested by the plaintiff, namely, that because § 52-225a (c) allows a credit for "*any amount* . . . paid . . . to secure [the plaintiff's] right to any collateral source benefit"; (emphasis

added); the plaintiff is entitled to an offset of the $2084.70 in premiums paid for the entire policy, would reimburse the plaintiff, not only for the amount she paid to secure her right to med pay, but also for those amounts that she had paid to secure her right to liability, collision, comprehensive and any other coverages included in the policy. Because, however, any benefits that the plaintiff may have received under those provisions of her policy were not involved in the calculation mandated by § 52-225a,[5] requiring the collateral source reduction to be offset by the amount of premiums paid for liability, collision, comprehensive coverage and the like would result in a windfall to the plaintiff.

Our conclusion that the plaintiff was entitled to a credit of only the $80 specifically allocated to med pay coverage under the policy is also buttressed by the legislative history of the operative statute. "Prior to the enactment of § 52-225a in 1985, Connecticut adhered to the common-law collateral source rule, which provides that a defendant is not entitled to be relieved from paying any part of the compensation due for injuries

---

[5] General Statutes § 52-225b defines collateral sources as "any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any *health or sickness insurance*, automobile accident insurance that provides *health benefits*, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of *hospital, medical, dental or other health care services. . . .*" (Emphasis added.) It cannot reasonably be contended that benefits paid out under the liability, collision or comprehensive coverage provisions of an automobile insurance policy are "health . . . or other similar insurance benefits," or that they may serve as payment or reimbursement for "hospital, medical, dental or other health care services" pursuant to § 52-225b. Such benefits, therefore, cannot be considered collateral sources for purposes of reducing the plaintiff's economic damage award pursuant to § 52-225a. Because § 52-225a (c) entitles the plaintiff to a credit only for the cost of those collateral source benefits that she has received, it follows that no offset should be allowed for premiums paid under an automobile insurance policy that are allocated to liability, collision or comprehensive coverage.

proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly independent of him. . . . The basis for [such a] rule is that a wrongdoer shall not benefit from a windfall from an outside source. . . . In 1985, however, the legislature by enacting Public Acts 1985, No. 85-574 (P.A. 85-574), abolished the common-law collateral source rule in medical malpractice actions. Public Act 85-574 . . . was codified as § 52-225a . . . . In 1986 . . . § 52-225a was extended by No. 86-338, § 4, of the 1986 Public Acts to abolish the common-law collateral source rule in all personal injury actions. . . . [The purpose behind the enactment of the statute] was . . . to prevent plaintiffs from obtaining double recoveries, i.e., collecting economic damages from a defendant and also receiving collateral source payments. See 28 H.R. Proc., Pt. 27, 1985 Sess., p. 9820, remarks of Representative Morag L. Vance; id., p. 9834, remarks of Representative Joseph D. Nardini; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1985 Sess., p. 1909, remarks of Senator Richard B. Johnston; 29 S. Proc., Pt. 10, 1986 Sess., p. 3442, remarks of Senator Johnston; 29 H.R. Proc., Pt. 22, 1986 Sess., pp. 8074–76, remarks of Representative Robert G. Jaekle." *Alvarado* v. *Black*, 248 Conn. 409, 416–18, 728 A.2d 500 (1999).

By limiting the plaintiff's ability to offset the collateral source reduction to the $80 allocated to med pay coverage, we resolve the issue presently before us in a manner consistent with the purpose of § 52-225a. We are, in effect, permitting the plaintiff to receive a credit for that amount expended to secure her right to med pay, while simultaneously ensuring that she is not overly compensated for the expenses attendant to the injuries she received in the underlying accident. To hold otherwise, and allow the plaintiff a return of the full $2084.70 she paid in premiums for the entire automobile insurance policy, would be to reimburse her for more than

the cost of med pay coverage. On the specific facts of this case, moreover, such a credit would completely offset the benefits paid out under the plaintiff's policy with Allstate such that there would be no collateral source reduction and the defendant would be bound to pay more than $20,000 in accordance with the jury's verdict. Such a result, however, would upset the equitable balance that § 52-225a seeks to strike between preventing defendants from benefiting from reduced judgments due to collateral source payments, on the one hand, and barring plaintiffs from recovering twice for the same loss, on the other.

The plaintiff contends that there is no potential for double recovery in the case at bar because, as we stated in *Alvarado* v. *Black*, supra, 248 Conn. 418, "[t]here is nothing inconsistent . . . between the statutory purpose of preventing double recoveries and an interpretation of § 52-225a (c) that permits plaintiffs an offset for premium payments . . . made . . . to obtain health insurance coverage." This language makes sense, however, only if we construe § 52-225a (c) as permitting the plaintiff a credit for the $80 specifically allocated to the med pay coverage portion of her insurance policy. Because such a recovery serves to reimburse the plaintiff only for the actual cost of the collateral source benefit that she had received as a result of the accident, it does not amount to the type of windfall the legislature sought to avoid in abrogating the common-law collateral source rule. Under the plaintiff's interpretation of § 52-225a (c), however, she would be entitled to a credit far in excess of the actual cost of her med pay coverage. As previously stated, the $2084.70 the plaintiff had expended to procure the entire automobile insurance policy would completely offset the $2000 worth of medical expenses Allstate had paid on her behalf, thus reimbursing the plaintiff twice for the same injury. Because the plaintiff's formulation of the credit to which she is

entitled pursuant to § 52-225a (c) would, effectively, result in a double recovery, it is contradicted, rather than supported, by the previously quoted language in *Alvarado*.

The plaintiff further contends that "[b]enefits paid out from health insurance and automobile accident insurance policies are treated alike for the purposes of determining . . . collateral source reductions under . . . § 52-225a (b)." According to the plaintiff, *Alvarado* stands for the proposition that a plaintiff is entitled to offset the entire premium paid for health insurance; "[i]t [therefore] follows . . . that . . . the *entire* automobile accident insurance premium should also be an allowable offset." (Emphasis in original.) The plaintiff's analogy is unpersuasive.

At issue in *Alvarado* v. *Black*, supra, 248 Conn. 410, was whether the credit to which the plaintiff was entitled pursuant to § 52-225a included her employer's contributions to the premiums paid for her health insurance coverage. In answering that question in the affirmative, we effectuated the legislature's intent to reimburse the plaintiff for the entire cost of those collateral source benefits that she had received under her insurance policy. Id., 415. Applying the rule of *Alvarado* to the present case thus defeats, rather than supports, the plaintiff's position because it permits the plaintiff to offset the $2000 in medical expenses paid on her behalf only by the $80 specifically attributed to the med pay coverage provision of her automobile insurance policy. As previously stated, to interpret the statute in such a way as to allow the plaintiff a recovery of the premiums paid for the entire policy would: (1) shower her with the very windfall that the legislature sought to avoid in enacting § 52-225a; and (2) contravene the specific statutory scheme set forth in § 52-225a by permitting the plaintiff to receive a credit for coverage that was never,

and could never be, considered a collateral source. See footnote 5 of this opinion.

In support of her assertion that she is entitled to a credit for the total premiums paid under the policy, the plaintiff contends that, because she could not purchase medical coverage from Allstate independent of the larger policy, "[i]f this entire premium had not been paid, there would have been no collateral source payments by which the defendant's liability for economic damages would be reduced." We are not convinced.

First, we note that the plaintiff was not required to purchase medical coverage from Allstate. In 1994, the legislature abrogated what had been, up until that point in time, statutorily mandated no-fault insurance. See Public Acts 1993, No. 93-297, §§ 28, 29, which became effective January 1, 1994. Thereafter, individual insureds could decide for themselves whether to purchase med pay coverage as part of their automobile insurance. The plaintiff in this case thus had the option either to pay a lesser premium for a liability policy without med pay coverage, or to pay a greater premium to secure med pay benefits under her liability policy.

Thus, it is oversimplifying the matter at hand to say that, without having paid the $2084.70 worth of premiums, the plaintiff would not have had any collateral source benefits that would require reduction of her economic damages. Although she was required to purchase the automobile policy in order to secure med pay coverage, the converse is not true: she was not required to purchase med pay coverage in order to secure the automobile policy. Thus, she, in fact and by choice, paid for two separate coverages: $80 for med pay; and $2004.70 for the remaining coverage.

Second, if we were to allow the plaintiff the amount of credit to which she believes she is entitled, we would create a disparity between the size of recoveries avail-

able to plaintiffs who (1) opt to purchase medical coverage under their automobile insurance, as opposed to plaintiffs who (2) opt to rely only on their other health policies. As the plaintiff conceded at oral argument before this court, had she chosen only to avail herself of her coverage under her employer sponsored health plan, she would be able to offset only those premiums paid to secure benefits thereunder. Where, however, as here, med pay coverage is procured as part of an automobile insurance policy, the plaintiff contends that she should be entitled to a credit that encompasses not only the cost of the med pay coverage, but also the cost of liability coverage, collision coverage, comprehensive coverage, and the like. We can think of, and the plaintiff has proffered, no principled reason for permitting such a windfall to those plaintiffs who chose to purchase med pay coverage through their automobile insurance policies.

Finally, we note that the plaintiff's position, if taken to its logical extreme, would produce a bizarre result. Take, for example, the plaintiff who purchases an automobile insurance policy, including med pay coverage, for a very expensive automobile and for very high amounts of liability coverage. In such a case, the high premiums likely would be attributable to the high liability and collision coverages. Following the plaintiff's line of reasoning, if the insured were injured in an automobile accident, she would be able to offset any collateral source payments received under the policy, not only by that portion of the premiums allocated to the med pay coverage, but also by the high premiums paid for the coverages specific to her expensive automobile and to her high liability exposure. Under such circumstances, the overall cost of the policy would unduly offset, and might even completely offset, any medical payments made thereunder. We do not think that the legislature, in enacting the offset provided for in § 52-

225a (c), meant to reduce its effect by including therein premiums paid for such coverages, which are wholly unrelated to an injured plaintiff's collateral sources.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment offsetting the plaintiff's collateral source payments by $80.

In this opinion NORCOTT and PALMER, Js., concurred.

SULLIVAN, C. J., with whom ZARELLA, J., joins, concurring. I agree with the majority's conclusion in this matter except on the issue of statutory interpretation. My position on this issue continues to be the same as set forth in my concurrence in *Mandell* v. *Gavin*, 262 Conn. 659, 672, 816 A.2d 619 (2003), and in the dissenting opinion by Justice Zarella, in which I joined, in *State* v. *Courchesne*, 262 Conn. 537, 597, 816 A.2d 562 (2003).